# THE EXCHANGE NATIONAL BANK OF POLO
## v.
# ALBERT DARROW, ADMINISTRATOR.

*Negotiable Instruments—Note—Forgery—Verdict.*

In an action brought by an assignee of a promissory note against the estate of the maker, where the defense was that the note had been fraudulently raised, or was a forgery, this court holds, the evidence being conflicting, that the jury were justified in finding that the note had been raised.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Carroll County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Messrs. M. D. SWIFT and WILLIAM BARGE, for appellant.

Messrs. J. M. HUNTER and H. C. WARD, for appellee.

MR. JUSTICE LACEY.   This was a suit based on a purported promissory note for $1,660, payable to Henry Metz, dated November 10, 1887, and due in twelve months from date and drawing eight per cent interest.   The note was indorsed by the payee, Metz, to the appellant about one month after the maker's death, and a short time before it was due by its terms.   The note was presented for collection against the estate of Jenkins at the March term of the County Court, 1891.   The claim was resisted in the County Court on the ground that it was not the note of the purported maker, the deceased, and in fact was a forgery.   The claim was allowed and the appellee then appealed the case to the Circuit Court, where, after two trials, the suit resulted in a verdict for the defense, and judgment was rendered against the appellant for costs.   On the first trial in the Circuit Court the jury failed to agree.

There were two grounds of defense; the one was that the signature of Jenkins, deceased, to the note, was not genuine, and was not in his handwriting, and the other was, that the note had been raised from the sum of $60 to that of $1,660, and that the date had been changed.   One of the main grounds for reversal assigned by appellant, is that the verdict was against the weight of the evidence, and we will consider this objection first.   The contention of appellant is, that the note was executed in Polo by Jenkins the day it bears date, November 10, 1887, and several witnesses were called by appellant, to wit, Leon Weil, George Metz, Solomon Metz, Maurice Metz, to sustain the note, who testified to being present and seeing Jenkins sign it.   The evidence of these witnesses was somewhat shaken by the internal evidence which it bore of having been manufactured.   They were all near relatives of Henry Metz, the payee of the note, except Weil, who was an intimate acquaintance, residing in Chicago, and, as he states, happened in Polo that day to see about buying a horse.   The payee of the note and these Metzes and Weil, all happened to be in the shoe store of George Metz in Polo, on that day, a little after twelve o'clock, when Jenkins came in and says to Henry Metz, " Henry, have you got that for me now," and Henry then took out the money and went behind a desk that stood there and counted out $1,660 and gave it to Jenkins, who signed the note and departed.

There is rather a remarkable concurrence in the witnesses swearing to the precise words used, and rather a remarkable circumstance that all these witnesses should happen at this shoe shop at this particular time.   The story itself has rather an air of improbability about it.   But it is greatly weakened by the evidence of witnesses for the appellee, Dr. McPherson, Job Clark, Chas. Dyer, Ora Wagner, Edward Morris, John Knox, Flavius J. Bradway, W. Chafie and Albert Darrow, who testify to facts which tend strongly to show that on the day and at the time the appellant's witnesses testify the note was signed, the deceased, Jenkins, was in the village of Milledgeville, situate twelve miles dis-

tant from Polo. The evidence to this fact seems quite strong. Then there were several witnesses swore by way of impeachment of the Metz witnesses, that their reputation for truth in that neighborhood was bad. It was in evidence also, that Henry Metz had in his possession a sixty dollar note of Jenkins, given in the spring of 1887, which had been settled, but had been retained by Henry Metz, who at the time of such settlement pretended to tear it up, but instead tore up a blank piece of paper. This, however, was disputed. The note in suit bears internal evidence of having been raised from a sixty dollar to a $1,660 dollar note, and also that the date had been changed. There was also evidence of experts for and against this theory, which was all before the jury. Also the evidence for and against the note being in the handwriting of Jenkins. The note itself was before the jury for inspection. After a careful reading of the case we are fully satisfied that the jury had abundant evidence on which to base its finding, that the note had been raised from sixty to $1,660, and that the date had been changed, and that it could not have been signed at Polo on the date it bears date.

The first, second, fourth and sixth of the appellee's instructions are complained of as being erroneous. We have carefully read those instructions and fail to discover any error in them, or anything that would tend to mislead a jury. There are no serious objections to the principles of law attempted to be announced by the instructions, but a close criticism of the language of them. We think, however, the language is sufficiently clear so that the jury would not be misled. The objection to the presence of Judge Shaw at the trial, and that he often consulted during the trial with counsel for appellee, has not, in our judgment, much force. There is no evidence that the jury was in any way misled or influenced by it, and without his having said or done anything to influence the jury, it would be without warrant to imagine his presence could have that effect.

After a careful examination of the case we perceive no error in the record. The judgment is therefore affirmed.

*Judgment affirmed.*