## Exchange National Bank of Polo v. Albert Darrow, Adm.

1. NEW TRIALS—*In Equity.*—In cases in which courts of equity are invoked to interpose after a verdict has been rendered in a court of law, and grant a new trial on the ground of newly discovered evidence, the rules are strict, almost to harshness.

2. SAME—*When Not to be Granted—Laches.*—Courts of equity will not grant a new trial in an action at law, upon the ground of newly discovered evidence, if the party applying has been guilty of *laches,* or might by reasonable diligence have procured the proofs before the trial complained of.

3. PLEADING—*An Elementary Rule.*—A pleading is to be construed most strongly against the pleader.

4. SAME—*An Application of the Rule—Laches.*—Where the complainant in a bill in equity seeking a new trial in an action at law, upon the ground of newly discovered evidence, alleged that he did not know of the evidence until after the judgment rendered in the trial complained of had been affirmed in the Appellate Court (which was on December 12, 1892), applying the rule. it would follow that the complainant knew of such evidence immediately after such affirmance, and as he did not file his bill until more than three years had elapsed (March 2, 1896), he was held to have been guilty of *laches.*

**In Equity.** Bill for a new trial. Appeal from the Circuit Court of Carroll County; the Hon. JOHN C. GARVER, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 17, 1897.

WILLIAM D. BARGE, attorney for appellant.

"If it appears that a judgment complained of is unjust, and that a party in good faith has used or attempted to use, all the means given him by the law to assert his rights by active efforts on his part, made in good faith, and to the extent that he has it in his power to use, but has, nevertheless, been prevented. from presenting a defense to the claim, equity should grant a new trial at law." Ballance v. Loomis, 22 Ill. 82; Walker v. Kretsinger, 48 Ill. 502; Seward v. Cease, 50 Ill. 228; Brown v. Luehrs, 79 Ill. 575.

J. M. HUNTER, attorney for appellee.

A new trial will not be granted on merely cumulative

Exchange Nat. Bank v. Darrow.

evidence when there is evidence sufficient to sustain the verdict and the court can not see from the whole record that justice has not been done. Gottschalk v. Hughes, 82 Ill. 484; Bowen v. Rutherford, 60 Ill. 41; Krug v. Ward, 77 Ill. 603; Laird v. Warren, 92 Ill. 204; Leigh v. People, 113 Ill. 372; Petefish v. Watkins, 124 Ill. 384.

MR. JUSTICE WRIGHT DELIVERED THE OPINION OF THE COURT.

Appellant filed its bill in equity seeking a new trial in a case tried at law against appellee, wherein the issues were found against appellant and final judgment rendered in bar of its action upon a promissory note for $1,660, bearing date November 10, 1887, alleged to have been made by James H. Jenkins in his lifetime, payable to the order of Henry Metz, due in one year after date, with eight per cent interest which the payee indorsed and delivered to appellant. Jenkins died in September, 1888, appellee was appointed adminis-trator, and, after a contested trial in the County Court, judg-ment was rendered in favor of appellant upon the note, from which an appeal was taken by the administrator to the Cir-cuit Court, where after two trials, the second being in June, 1891, the jury found the issues against appellant and upon that verdict final judgment was rendered, from which an appeal was taken to this court, where the judgment of the Circuit Court was affirmed, and an appeal having been pros-ecuted to the Supreme Court resulted in an affirmance of the judgment of the Appellate Court. See 45 Ill. App. 466, and 154 Ill. 107.

The defense to the note sued on was that it was not the note of Jenkins, that the signature thereto was a forgery, and that another note previously given by Jenkins to Metz, for $60, had been fraudulently changed in date and amount to correspond with the note in suit, the contention of appel-lant being that the note was genuine, and given to Metz for the actual consideration of $1,660, for money lent by him to Jenkins on the date of the note. There was much conflict of evidence at the trial of the issues at law concerning the signature, and as to the lending of the money and execution

of the note, and it is now claimed by appellant, in its bill filed herein, that it is entitled to a decree awarding it a new trial of the issues at law on the ground of newly-discovered evidence, which it contends is not cumulative merely, and also conclusive in its nature. The newly-discovered evidence is presented by the bill in the form of affidavits of the proposed witnesses, who, it is alleged, would testify to the facts therein stated.

A demurrer was interposed to the bill and by the court sustained, and the bill dismissed for want of equity, from which appellant appeals to this court.

Much of the newly-discovered evidence set out in the bill of complaint, consists of the statements and admissions of the deceased Jenkins in his lifetime; that at the time in question, the date of the note, he had borrowed $1,660, or a large sum of money from Metz, the payee of the note, and that he, Jenkins, after such time, was making preparations to pay the same. From the averments of the bill it appears no evidence of the admissions or statements of Jenkins, in regard to such matters, were given in evidence on the trial at law, and we are therefore of the opinion such proposed evidence is not cumulative merely, and it would seem, had the same been produced at the trial in the law court, it would have been well nigh conclusive; and if it shall appear the appellant is guilty of no *laches* in its efforts to discover and produce such evidence on the trial of the issues at law, or afterward, in view of filing its bill, or in filing its bill after the discovery thereof, we do not doubt it is entitled to the relief prayed by the bill.

In cases like the one presented, in which courts of equity are invoked to interpose after verdict at law, on the ground of newly-discovered evidence after trial, which could not by ordinary diligence have been ascertained before, the rules have always been strict, almost to harshness. In Story's Eq. Jur. (Vol. 2, Secs. 894 to 896), the doctrine is discussed and the authorities cited upon this subject, and it is there stated that relief will not be granted if the party applying has been guilty of *laches* as to the matter of defense or claim,

or might by reasonable diligence have procured the required proofs before the trial. The general reasoning upon which the doctrine is maintained is the common maxim that courts of equity, like the courts of law, require due and reasonable diligence from all parties in suits, and that it is sound policy to suppress multiplicity of suits. "It is not sufficient to show that injustice has been done, but that it has been done under circumstances which authorize the court to interfere. Because, if a matter has been already investigated in a court of justice according to the common and ordinary rules of investigation, a court of equity can not take on itself to enter into it again. Rules are established, some by the legislature, some by the courts themselves, for the purpose of putting an end to litigation. And it is more important that an end should be put to litigation than that justice should be done in every case. The truth is, that owing to the inattention of parties, and several other causes, exact justice can seldom be done. The inattention of parties in a court of law can scarcely be made a subject for the interference of a court of equity. * * * A bill for a new trial is watched by equity with extreme jealousy. It must be that injustice has been done, not merely through the inattention of the parties."

From the reference to the text of the rules governing cases like this, and which we regard as elementary and well established, it was the duty of the appellant, as soon as it knew the note would be contested, to use ordinary diligence to discover all the evidence pertinent to the issues to be tried. It should have inquired by specific interrogation of the persons with whom Jenkins associated and did business whether they had ever heard him make any statements or admissions concerning the note in question, and concerning the borrowing of money of Metz and its repayment. We have searched the bill in vain to find averments of specific acts of diligence of this nature, and that would tend to elicit the particular information said to have been obtained at a later time. The nearest approach to such a statement is the averment in the bill that it (the complainant) "prosecuted its search for tes-

timony from the day it first learned its claim would be contested up to and including the day its motion for a new trial was overruled, and judgment rendered against it; that many of the people living in the vicinity of the place where Jenkins resided were related to him, nearly all of them were friendly to him, and in sympathy with his heirs; others were hostile toward some of complainant's witnesses and none were friendly, and complainant was unable to learn from the people of the vicinity anything that would support it in its contention herein."

No rule of pleading is more elementary than that the pleading is to be most strongly construed against the pleader. Applying this rule to the averment of the bill above specified, admit its truth, as does the demurrer, still by no fair intendment can it be inferred that appellant made any inquiry concerning any statement or admission of Jenkins regarding his giving the note to or borrowing the money of Metz; that being the particular evidence now sought by the bill to be introduced as controlling the issue at law.

Due diligence also required appellant to have promptly filed its bill after discovering the new evidence, and also to prosecute diligently its search for such evidence in contemplation of presenting such bill. We are forced to the conclusion it was negligent in failing to file its bill for relief more promptly. The averment of the bill is that appellant did not know of the new evidence until after the judgment was affirmed in this court. Again applying the rule of pleading before mentioned to this statement, it would follow appellant knew of it immediately after December 12, 1892, the day of such affirmance. The bill in the case was not filed until March 2, 1896, being a delay of more than three years. The affidavits of the proposed witnesses were made from eight to nine months before the bill was filed, and no excuse is made by the bill for this delay, nor for the delay in obtaining such affidavits. We can not by the strict rules of equity governing cases of this nature excuse such delays and thereby relieve appellant from the consequences of its own *laches*.

We are therefore of the opinion the *laches* of appellant have been such, in the particulars. designated, as to bar the relief for which, by its bill, it has prayed, and if injustice has been done, it must be attributed to its own inattention.

The demurrer was properly sustained and the bill dismissed for want of equity, and the decree of the Circuit Court will therefore be affirmed.

CRABTREE, P. J., took no part.